IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MICHAEL JAHON BUCHANAN, | |
| Plaintiff, | CIVIL ACTION NO.: 5:20-cv-90 |
| v. | |
| WARDEN STEVE UPTON, SR., et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motion to Dismiss. Doc. 40. Defendants Webb, Helms, Upton, Stone, Jones, Williams, Jordan, and Clements move to dismiss based on mootness, or, in the alternative, Plaintiff's failure to exhaust his available administrative remedies. Doc. 40-1 at 1–2. Plaintiff filed a Response opposing Defendants' Motion. Doc. 45. Defendants replied. Docs. 46. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint.[1] Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PLAINTIFF'S ALLEGATIONS

Plaintiff brought this suit, asserting claims under 42 U.S.C. § 1983, alleging Coffee Correctional Facility ("CCF") officials failed to protect him from harm after he was targeted by

---

[1] Defendants Sexton, Franklin, and Grieco have not yet been served. See Doc. 37. However, the reasons for recommending dismissal are equally applicable to the unserved Defendants. Furthermore, the unserved Defendants are due to be dismissed under Federal Rule of Civil Procedure 4(m).

gang members within the prison.  Doc. 18 at 9–10.  Plaintiff alleges, while he was housed at Jenkins Correctional Center ("JCC"), another CoreCivic, Inc. prison, a bounty was placed on his head by two female officers.  Doc. 18 at 9.  Plaintiff claims he earned the enmity of those officers after he had a verbal altercation with one officer and reported both officers for distributing contraband to gang-affiliated inmates.  Id.  Plaintiff was sent to CCF after it was determined his life was in danger at JCC.  Id.

Once he was moved to CCF, Plaintiff requested protective custody.  Id.  Plaintiff was placed in segregation until the denial of his protective custody request.  Id.  On October 18, 2019, he was moved to general population where he was housed in Unit 4-N.  Id.  On October 29, 2019, Plaintiff was attacked by gang-affiliated inmates while in the shower area.  Id. at 10.  Plaintiff escaped with minor injuries, but the inmates told him he had to leave the unit or die.  Id.  Plaintiff informed an officer about the attack.  Id.  While he was waiting for an officer escort to segregation, Plaintiff was approached by a gang-affiliated inmate named Davis.  Id.  Davis threatened Plaintiff with a knife, telling him he better not say anything.  Id.  Plaintiff was escorted to the segregation unit by Defendant Gillum.  Id.

On November 1, 2019, Defendant Helms, Chief of Security, spoke with Plaintiff regarding Plaintiff's unwillingness to leave the segregation unit.  Id.  Plaintiff advised Defendant Helms about the incident in the shower area and told him he requested protective custody for this incident.  Id.  Defendants Helms told Plaintiff to give him certain documents related to the shower incident so Defendant Helms could "handle it."  Id.  Plaintiff did so.  Id.  However, Defendant Clements later told Plaintiff Defendant Helms had not turned the documents over to the proper authorities.  Id.  On November 7, 2019, Plaintiff was sent back to general population.  Id. at 13.  Plaintiff appears to have moved back and forth between segregation and general

population over the next couple months.  See id. at 15 (protective custody interview occurred on December 7, 2020, in the segregation unit), id. at 17 (Plaintiff received a move slip on December 27, 2019, to re-enter general population), id. at 14 (Plaintiff spoke to Defendant Jones on February 18, 2020, while he was in the segregation unit).

Plaintiff argues multiple other Defendants failed to protect him despite knowing the threats to Plaintiff's life.  Plaintiff asserts Defendants Upton, Grieco, and Stone were aware of the danger Plaintiff was in due to grievance notifications and argues Defendants had a duty to enforce the policies in place at CCF.  Id. at 11–12.  Plaintiff asserts Defendant Jones received a 51-C incident statement Plaintiff completed about the attack in the shower (though Jones denied receiving it) and Jones disregarded Plaintiff's requests for help while Plaintiff was housed in the segregation unit.  Id. at 14.  Plaintiff states Defendant Williams was in charge of weekly segregation hearings and, despite being informed of the threats against Plaintiff's life, still denied Plaintiff's protective custody requests.  Id. at 14–15.  Defendant Jordan conducted Plaintiff's protective custody interview in which Jordan was informed of the danger to Plaintiff but still denied him protective custody.  Id. at 15–16.

Defendant Sexton interviewed Plaintiff after Plaintiff's family made several calls about the threats to Plaintiff's life.  Id. at 16.  Defendant Sexton stated he was going to grant Plaintiff's protective custody request.  However, Plaintiff's request was not granted, and Plaintiff asserts Defendant Sexton was deliberately indifferent in failing to grant the request.  Id. at 17.  Plaintiff argues Defendant Clements attempted to coerce Plaintiff to enter general population by giving him disciplinary actions for not returning to general population.  Id. at 19.  Finally, Defendant Franklin sanctioned Plaintiff for not returning to general population.  Id. at 19–20.  As relief, Plaintiff seeks protective custody, transfer to a safe prison, and his restrictions lifted.  Id. at 21.

3

**PROCEDURAL HISTORY**

Plaintiff initially filed a Complaint on July 14, 2020. Doc. 1. On April 6, 2021, after being ordered to do so by this Court, Plaintiff filed an Amended Complaint, which superseded and replaced the original Complaint. Doc. 18; see also Doc. 25 at 1 n.1. After completing frivolity review, the Court dismissed Plaintiff's claim against Defendant Gillum. Docs. 25, 36. On August 3, 2021, Plaintiff submitted a letter indicating he had been transferred to Wheeler Correctional Facility ("WCF"). Doc. 23. It is undisputed Plaintiff has been transferred to and housed at WCF for nearly a year.

In their Motion, Defendants argue Plaintiff's claims have been rendered moot since he was transferred to WCF, and thus, the Court lacks jurisdiction. Doc. 40-1 at 3. To the extent any claims could have survived, Defendants argued Plaintiff failed to exhaust available administrative remedies. Id. at 9. Plaintiff responded, arguing since both CCF and WCF are operated by CoreCivic, Inc., and under the control of Defendant Upton, he is still under the same threat he was previously. Doc. 45 at 6–7.

**DISCUSSION**

**I.    Plaintiff's Transfer to WCF Moots His Claim**

"[J]urisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625 (1979). "In considering whether a case is moot, we look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued." Owens v. Centurion Medical, 778 F. App'x 754, 758 (11th Cir. 2019) (quoting Dow Jones & Co. v. Kaye, 256 F.3d 1251, 1254 (11th Cir. 2001)).

Except in circumstances not present here, "an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985); see also Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding case was moot after inmate, who complained about conditions of administrative segregation at an Alabama facility in comparison to others, was transferred to one of the facilities he alleged was better equipped). "Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (quoting Dudley v. Stewart, 724 F.3d 1493, 1494 (11th Cir. 1984)).

Plaintiff cannot show any continuing, present injury or real and immediate threat of repeated injury. Plaintiff's Complaint concerns only Defendants' failure to place him in protective custody at CCF. See Doc. 18. Plaintiff states clearly he only seeks injunctive relief and does not seek monetary relief. Id. at 21; Doc. 45 at 2. Plaintiff's claims are specific to events which occurred at CCF. Doc. 18 at 7. Plaintiff was attacked in CCF's Unit 4-N shower area by gang-affiliated inmates. After he reported the attack, but prior to being placed in protective custody, Plaintiff was threatened with a knife by an inmate named Davis. Plaintiff also identifies the alleged indifference only as to CCF staff members. Further, his prayer for relief is for injunctive measures to prevent future incidents at CCF, asking to be transferred to a safe prison and to be placed in protective custody there. Doc. 18 at 21; see Wahl, 773 F.2d at 1173 (remanding with instructions to dismiss as moot where claims all concerned conditions at certain jail and prayer for relief was for injunctive measures to correct those conditions).

5

Plaintiff has already been transferred to a new prison and has been housed there for approximately one year. Doc. 23 (notifying the Court of a change of address).

Plaintiff's transfer has removed him from the conditions from which he is seeking relief; thus, he has no legally cognizable interest in the outcome of this case. Plaintiff's basis for his Complaint was the denial of his protective custody request at CCF. Plaintiff identified specific inmates housed at CCF as the source of the threats to his life and identified CCF officers who failed to protect him. Plaintiff requested only injunctive relief in the form of placement in protective custody and a transfer to a safe prison. Thus, Plaintiff's transfer to WCF has rendered the case moot.

Plaintiff has not shown there is any reasonable expectation the alleged violations will recur at WCF. Though Plaintiff argues in his Response the threat to his life exists in any CoreCivic, Inc. prison, his allegations are conclusory and speculative. Plaintiff does not identify any specific threats or discernible danger he has faced by inmates at WCF. Plaintiff does not identify anyone at WCF who refused to provide him with protective custody. The last information provided indicated Plaintiff had requested protective custody and was currently in a segregated cell at WCF with no roommate. See Doc. 47 at 1. Despite over a year at his new prison, Plaintiff has not sought to amend to include any allegations about the conditions of his confinement at WCF. Furthermore, there is no indication Plaintiff will return to CCF in the future. See McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding injunctive claims were properly dismissed as moot since the potential for the plaintiff to be returned to the jail or conditions of which he complained was too speculative). Since there is no reasonable expectation the alleged violations will recur and Plaintiff's transfer eliminated the

effects of the alleged violation, Plaintiff's claim against Defendants is moot and must be dismissed.

Plaintiff argues his claim has not been rendered moot because he was merely moved from one CoreCivic, Inc. facility to another and he remains under the supervision of Defendant Upton. Doc. 45 at 6. Thus, he argues the threats to his life at CCF have followed him to his new placement at WCF. This argument is unpersuasive. None of Plaintiff's allegations of deliberate indifference concern CoreCivic, Inc. as an entity, its policies, or anything unique to the company. Plaintiff's continued incarceration at a CoreCivic, Inc. facility appears immaterial to his claims. As to Defendant Upton, Plaintiff only appears to allege a supervisory liability theory against him based on the actions of the CCF officers, not any conduct by Defendant Upton. Further, there is no indication Defendant Upton is doing anything that is placing Plaintiff at risk at WCF. The simple fact that Defendant Upton was in a management position at both facilities is not enough on its own to show Plaintiff's claims against him are not moot. Nothing in the briefing on the instant Motion suggests Defendant Upton is personally involved in any deliberate indifference to Plaintiff's safety.

Plaintiff asserts his transfer to WCF was merely an effort to prevent further litigation and suggests he will still be under threat after this litigation ceases. Id. at 9. Plaintiff cites to Burns v. Pennsylvania Department of Corrections, 544 F.3d 279 (3d Cir. 2008), and Scott v. District of Columbia, 139 F.3d 940, 942 (D.C. Cir. 1998), as support for this contention. These cases are distinguishable. In Burns, the Pennsylvania Department of Corrections promised to refrain from the future seizure of funds from the plaintiff's inmate account, three years after the original violation occurred. 544 F.3d at 283. The Court determined the plaintiff's allegation of a completed procedural due process claim was sufficient to defeat mootness and, even if it was

not, the plaintiff could potentially receive monetary damages on his claim, which was not rendered moot by a promise to refrain from illegal activity. Id. at 284. The instant case involves a materially different claim and requested relief—Plaintiff is solely seeking injunctive relief on a claim about his conditions of confinement at CCF. Burns is inapposite.

Scott also is distinguishable. In Scott, the plaintiffs received a permanent injunction from the district court that ordered the District of Columbia to provide them with a smoke-free environment. 139 F.3d at 941. The question was whether an appeal of the injunction was moot since the plaintiffs had been transferred to an Ohio prison. Id. The Scott court found the matter was not moot, since the District of Columbia had treated the injunction as applicable within the Ohio prison. Id. Scott is distinguishable from the instant case. Plaintiff has not been granted previous injunctive relief and WCF has not treated Plaintiff as if he was granted injunctive relief. Further, Defendants are not appealing an existing injunction. Defendants argue the Court lacks jurisdiction because there is no longer a live controversy. Scott offers no guidance on the issues before the Court.

Plaintiff has failed to show his past exposure to illegal conduct has been accompanied by continuing, present injury or real and immediate threat of repeated injury. See Owens, 778 F. App'x at 759. Thus, Plaintiff's claim is moot and must be dismissed. I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint.[2]

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's

---

[2]     Because I recommend the Court grant Defendants' Motion to Dismiss based on mootness, I decline to analyze Defendants' alternative argument on whether Plaintiff failed to exhaust his administrative remedies.

order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of these Defendants' Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's Complaint.  Doc. 40.  Because I have recommended dismissal of Plaintiff's Complaint, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 8th day of August, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA